**WEINBERGER v. PHILLIPS.**

District Court, S. D. New York.

Feb. 17, 1947.

Nathan Messinger, of New York City (Norman P. S. Schloss and I. Russell Stein, both of New York City, of counsel), for plaintiff.

David Kugel, of New York City (Herman Mendes, of New York City, of counsel), for defendant.

GALSTON, District Judge.

The jury having returned a verdict in favor of the plaintiff in the sum of $76,-347.88, decision was reserved on defendant's motions to set aside the verdict and for a dismissal of the complaint.

The alleged contract was oral. There was no writing or other memorandum signed by the defendant. The plaintiff had married a daughter of the decedent. Since the action is brought against the ex-

ecutrix of a deceased person with whom the plaintiff alleges he made the contract, it becomes important carefully to scrutinize the evidence in the case. It will be helpful, for purposes of comparison, to record the contract as alleged in the complaint, the testimony of Maurice Weinberger, father of the plaintiff; that of Henry Weinberger, an uncle of the plaintiff; and of the plaintiff himself.

### The Complaint

It is alleged that the decedent agreed that if the plaintiff would sever his employment in the State of Georgia, make his residence in the City of New York, and enter the employ of National Hair Cloth Co. (a partnership in which the decedent was a partner), decedent would pay or cause to be paid to plaintiff while so employed the salary of $150. per week and one-third of Phillips' share of the profits earned by the firm during said period.

### Testimony of Maurice Weinberger

The witness said that on the day before Christmas, 1940, in Nashville, at the home of Maurice Weinberger, the decedent told him that he was thinking of what he could do for the plaintiff in his textile business, and said:
"If you would let your son come to New York, I will give him $150. per week drawing account. I will teach him the business, and then after he learns the business he can take my place * * *. I am very proud to have a son now who can be able to step into my place and look after my wife's interest and my two daughters' interest in a financial way should I be suddenly taken away." To which Maurice Weinberger replied:
"Mr. Phillips, that $150. per week that you are giving the boy is not as much as he is earning now or drawing, whether he makes it or not does not make any difference. He is getting it to provide for his family, and if you only give him that much there is no incentive."

Weinberger said Phillips replied:
"Yes, but I have not finished. I am going to give him a one-third of

### Testimony of Henry Weinberger

Describing the conversation that he and Maurice Weinberger had with the deceased on the day before Christmas, after hearing from his brother that Phillips was offering the plaintiff $150. a week and the one-third of Phillips' share of the profits, Henry said:

"Well he is making more in Atlanta."

Phillips answered:
"Yes, he has got more to look forward to. There is so much of a bigger future for him in New York, etc."

Again Henry Weinberger said that not at the Christmas dinner, but directly after dinner, the decedent at the table with plaintiff, his father and the witness, made inquiry of Harold as to whether he had spoken to his grandmother. Henry denied that the matter was discussed at the dinner table with all the others present.

my share of the profits if he will come in there."

Later that day Maurice Weinberger, Henry Weinberger and Phillips are said by Maurice Weinberger to have had a conversation. Maurice Weinberger said to the decedent:

"tell Henry everything you told me upstairs about the $150. per week and the one-third of his share of the profits in the hair cloth company."

And Henry answered, saying to Phillips:

"Of course, you realize that you are paying him $150. a week, and that is not as much to live on as he had been used to live on, and the one-third of the profits that you are going to give him won't come in for a year, and what will he do in the meantime?"

On Christmas day, said Maurice Weinberger, Phillips told him that he and the plaintiff had had a talk and Phillips said that Harold told him that he could not consider anything like coming to New York until he first discussed the matter with his grandmother.

Maurice Weinberger said that at the Christmas dinner there were present plaintiff's wife, the decedent and his wife, Weinberger, his brother, the plaintiff and the plaintiff's grandmother, and that at this Christmas dinner the decedent spoke to Harold

and asked him whether he had spoken to his grandmother, to which the plaintiff responded yes, he had, but that he would not give an answer to Phillips that day, and Phillips answered:

"now I don't see why you should hesitate on such a wonderful offer like this. You are going to come to New York; you are going to be with us; you are going to have the $150. per week drawing account; you are going to have one-third of my share of the profits; and if you have any regard for money at all you would immediately grab a proposition like that * * *."

A few days later, in Atlanta, in the presence of the decedent, the plaintiff's wife and plaintiff's father, plaintiff said to his wife:

"Well, I know you are going to be happy now. We have decided to accept Mr. Phillips' offer that he made and I think it is going to be the best for all of us—at least I hope it is."

This witness also said that the profits were to be paid the plaintiff annually, and that he was "to learn the business first."

No testimony was given by the plaintiff as to the making of the alleged contract. ▮ Thus it appears that the allegations of the complaint fail to embody all of the essential terms of the agreement as recited by Maurice Weinberger. The divergence must be stressed because of the rule well established as the law of the State of New York that oral contracts made with a decedent must be established by evidence clear and convincing. From the Weinberger testimony it appears that Phillips

had said that he was to learn the hair cloth business so that he could take Phillips's place. There is no such undertaking alleged in the complaint. Moreover, the proposition made to Mr. Maurice Weinberger included an undertaking that he permit his son to come to New York. That does not appear in the complaint. Weinberger, referring to the Atlanta conversation, said that the plaintiff told his wife: "We have decided to accept Mr. Phillips's offer that he made." The use of the plural pronoun would indicate that the contract contemplated the agreement of the father, which is not alleged as the agreement in the complaint. And nowhere does it appear what the talk was in the Nashville hotel between the decedent and the plaintiff, which preceded this alleged acceptance by the son in Atlanta.

The difference in recitals of Maurice Weinberger and Henry Weinberger as to what took place at the Christmas dinner, would ordinarily not be of moment were it not that in cases of this kind, clear and convincing evidence is the strict requirment of the rule. Incidentally it may be observed that Mrs. Phillips and her two daughters testified that at the Christmas dinner there was no discussion of a proposed arrangement between the plaintiff and the decedent. In this respect they agree with what Henry Weinberger said.

Again it may be noted that Maurice Weinberger admitted in cross-examination that in his talk with Phillips, Phillips said that the plaintiff would be receiving $30,000 a year, "annually." That is not set forth as a term of the contract alleged in the complaint. Also it must be noted that despite the fact that the complaint alleges performance by the plaintiff, there is no showing in the plaintiff's case that he did learn the business as contemplated by Phillips, according to the father's version of the contract. Indeed Weinberger, Sr., admitted that Phillips complained bitterly about the plaintiff's lack of interest in the business. Weinberger, Sr., said: "Mr. Phillips brought up the question that Harold just was not doing anything; there was practically no need for him in the business or anywhere else that he could see."

Maurice Weinberger also said at one time that he told the decedent: "'I don't want you to do anything for me,' I said. 'You leave me out of this thing. You just live up to the agreement that you made to me for the boy,' * * *."

Finally as to the probabilities, there was no showing whether the plaintiff was to get one-third of the gross or net profits of Phillips before or after the federal income tax payable thereon was paid by the decedent. Weinberger testified there was nothing said on that subject. If indeed the plaintiff was to receive, according to either version, that of the complaint or of Maurice Weinberger, one-third of the profits received by the decedent from the hair cloth company before payment of his personal income tax, the decedent would have made a sorry bargain in the light of the prevailing federal income tax statute.

In the light of the foregoing uncertainties, the conclusion is that the contract, as alleged in the complaint, and the alleged performance thereof, were not proved by the evidence. Moreover, the evidence does not meet the test defined in Rosseau v. Rouss, 180 N.Y. 116, 72 N.E. 916; Roberge v. Bonner, 185 N.Y. 265, 77 N.E. 1023, affirmed 94 App.Div. 342, 88 N.Y.S. 91. Though the general rule as to weight or quality is no different in one case than in the other, Judge Hiscock in Ward v. New York Life Insurance Co., 225 N.Y. 314, at page 322, 122 N.E. 207, at page 209, went on to say:

"In applying the rule and test to specific evidence, however, it very likely will and should occur that the triers of fact will more carefully and critically scrutinize evidence offered against a dead person's estate for the purpose of deciding whether it does make the necessary weight and preponderance of evidence, than would be done if the testimony was offered against one who was alive to contradict it."

It becomes unnecessary then to discuss the defense of the statute of frauds. Though it may be said that if the contract made was that testified to by Maurice Weinberger, it could not have been performed within one year from the date it was made, for, as he said, the payment of

profits was to be an annual matter. Personal Property Law of the State of New York, Consol.Laws, c. 41, Sec. 31, subdivision 1; Kelley v. Champlain Studios, Inc. 223 App.Div. 388, 228 N.Y.S. 500; Cohen v. Bartgis Bros. Co., 264 App.Div. 260, 35 N.Y.S.2d 206 (discussed in Droste v. Harry Atlas Sons, Inc. et al., 2 Cir., 145 F.2d 899 and 2 Cir., 147 F.2d 675).

From the foregoing I conclude that the plaintiff failed to prove the cause of action alleged in the complaint. The motion to set aside the verdict of the jury is granted. The motion for a directed verdict is denied. Settle order.