**UNITED STATES of America**

v.

**Morris BARBANELL, Defendant.**

United States District Court
S. D. New York.
June 29, 1964.

Robert M. Morgenthau, U. S. Atty., for Southern District of New York, Neal J. Hurwitz, Asst. U. S. Atty., of counsel, for United States of America.

William Esbitt, New York City, David Serko, New York City, of counsel, for defendant.

FEINBERG, District Judge.

Defendant Morris Barbanell moves for the suppression and return of certain items taken after a search on October 28, 1963, at his place of business at 108 East 16 Street in New York City. The search and seizure took place after defendant was arrested for wilfully and knowingly importing into the United States a shipment of merchandise by means of a false invoice in violation of 18 U.S.C. § 542. No indictment or information has been filed as yet in this case.

The arrest grew out of an investigation of defendant Barbanell conducted by Customs Agent Robert Frager. Barbanell is in the business of importing cutlery into the United States. After an examination of some of defendant's records on September 12, 1963, Agent Frager believed that Barbanell had been importing goods into the United States without paying full duty on them from four German exporters: Rottgen, Schlemper, Andreas and Lauterjung. Upon a further request of Agent Frager to examine additional records of defendant, defendant's attorneys asked for a conference on October 23, 1963. Agent Frager, before this meeting, visited an assistant United States attorney to discuss the investigation and advisability of getting a search warrant. Action was deferred until after the October 23, 1963 meeting with defendant's attorneys. At this meeting, Agent Frager was informed that Barbanell would not make available any of his records, preferring to stand on his Fifth Amendment rights. The request was made that since Barbanell had heart trouble all papers should be served upon his attorneys. Two days later, on Friday, October 25, 1963, Agent Frager met with an assistant United States attorney to again discuss with him the Barbanell investigation. At this time, the subject of a search warrant was mentioned and the assistant United States attorney informed Agent Frager that a search warrant would not be requested, but rather that an arrest warrant would be obtained. The warrant was secured from the United States Commissioner late that

Friday afternoon, · upon a complaint charging that one specific importation was made by use of a false invoice. Agent Frager, not knowing the home address of Barbanell,[1] decided to wait until Monday morning to execute the warrant.

On Monday morning, Agent Frager, together with two other customs agents, went to defendant's place of business arriving around 9:40 A.M. They waited until about 10 A.M. before they entered. Agent Frager had decided in his own mind that if Barbanell was found in his place of business, a search would be made for the "means and instruments" of the crimes that Agent Frager believed Barbanell had committed with the four European exporters.[2] However, if Barbanell appeared on the street, he would be arrested outside his place of business. Upon entering Barbanell's premises, the arrest was made and a search commenced. Articles were seized from cabinets and desks relating to shipments from the four exporters. At the time of the arrest, it is conceded by the government that no crime was being committed in the presence of the arresting officers.[3] Defendant was not arrested for any crime other than the one charged in the complaint upon which the arrest warrant was issued.

Defendant argues that the materials seized should be suppressed and returned to him because (1) the complaint underlying the warrant of arrest was insufficient and thus the search and seizure were not incidental to a lawful arrest; (2) the arrest was merely a subterfuge for a search and seizure; and (3) the materials seized were not the means and instrumentalities of the crime alleged in the complaint.

Defendant argues that his arrest was illegal because the complaint signed by Agent Frager did not set forth adequate basis upon which the Commissioner could determine whether probable cause existed to support the issuance of a warrant. Under Rules 3 and 4, Fed.R.Crim.P., a warrant of arrest can only issue upon a written and sworn complaint (1) setting forth "the essential facts constituting the offense charged" and (2) showing "that there is probable cause to believe that an offense [had] been committed and that the defendant has committed it." The second paragraph of the complaint alleges that on or about November 19, 1962, defendant unlawfully, wilfully and knowingly imported goods into the United States under New York Consumption Entry No. 854154 from Albert Rottgen by means of a false invoice dated October 31, 1962. The complaint states that the actual value of the imported goods was $915.21, but the declared value was set at $545.83. The third paragraph of the complaint sets forth the sources of Agent Frager's knowledge. His knowledge was based upon investigations made by him, including appraisal of the imported merchandise and a comparison of the false invoice [the invoice submitted to the Customs House] with the true invoices [the invoice submitted to the Customs House plus a second invoice reflecting packing charges for the same shipment].

A complaint is defective if it states that a crime was committed without setting forth the basis of knowledge of the complainant. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Also invalid are complaints which are merely general conclusory statements that knowledge was gained through official investigations, third-party statements or reports without specifying what the investigations showed or what the reports and statements indicate. United States v. Greenberg, 320 F.2d 467 (9 Cir. 1963); Di Bella v. United States, 284 F.2d 897 (2 Cir. 1960), vacated with instructions to dismiss the appeal, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); compare United States v. Ramirez, 279 F.2d 712

---

1. No attempt was made to locate Barbanell's home address, Transcript [hereinafter cited as "Tr."], pp. 44–45.

2. Tr. pp. 67–75.

3. Tr. pp. 135–36.

(2 Cir.), cert. denied, 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74 (1960).

■ I find that the complaint in this case is sufficient to enable an impartial judicial officer to determine whether there is probable cause to believe that defendant has committed the crime charged. The complaint sets forth sources of information sufficient to warrant the belief that defendant imported merchandise into this country without paying full duty. The basis of knowledge for this charge is specifically set forth: a comparison of the false invoice with the true invoices.

Defendant next argues that the arrest was a subterfuge for the search. The following facts, among others, are cited to support this contention: the discussion of Agent Frager with the assistant United States attorney concerning the issuance of a search warrant before the October 23, 1963 meeting with defendant's attorneys; the delay in making the arrest over the weekend without attempting to locate defendant's home address and the making of the arrest on Monday in defendant's place of business; the failure to call defendant's attorneys to effect defendant's surrender for arrest; Agent Frager's desire to search for crimes other than the one named in the complaint; and the statement of one of the agents during the search that they should not waste too much time, since they wanted to complete the search before the defendant's attorneys arrived.

The government cites, on the other hand, testimony of the agents that they would have arrested defendant on the street in front of his place of business if they had seen him there and the issuance of the warrant late Friday and its execution on Monday morning.

■ I find that the arrest was not a subterfuge for the search.[4] Although the question is a close one, my conclusion is that the agents desired to arrest defendant and search for the materials seized incidental thereto. This is not a case where the agents maneuvered defendant into his place of business so that his records could be searched and seized. Although there was a two day delay in executing the arrest warrant, I do not find this was primarily due to any design to place the arrest in defendant's place of business, but rather to the weekend and lack of knowledge of defendant's home address. Although defendant's address could probably have been found if the agents tried, since there was little likelihood that defendant would flee, failure to try does not necessarily lead to the conclusion that the arrest was purposely delayed so that it could be had in defendant's place of business. There was testimony that the agents would have arrested defendant if they had seen him coming along the street on his way to his place of business. The search was not a general rummaging expedition, but rather a search designed to seize materials relating to four suppliers. The remark by one of the agents that they should leave before the attorneys got there may merely have been a natural reluctance to prevent an argument or scene. The facts in this case are not as strong as in others where the search was held to be in reality not incident to a lawful arrest. See McKnight v. United States, 87 U.S.App.D.C. 151, 183 F.2d 977 (1950); United States v. Alberti, 120 F.Supp. 171 (S.D.N.Y. 1954). Accordingly, this contention must be denied.

Finally, defendant argues that the materials seized and taken from his place of business were neither the means nor instrumentalities of the crime for which he was arrested. The return filed by the arresting agents shows that the items seized include, among other things: defendant's statement of expenses for two European trips; bank statements from January 1962 through December 1962; correspondence with A. Rottgen for the period from December 1961 through November 1963; invoices from A. Rottgen

---

4. See Carlo v. United States, 286 F.2d 841 (2 Cir.), cert. denied, 366 U.S. 944, 81 S.Ct. 1672, 6 L.Ed.2d 855 (1961); United States v. Stern, 225 F.Supp. 187 (S.D. N.Y.1964).

for the years 1962 and 1963; correspondence and invoices from Schlemper, Andreas, and Lauterjung covering mainly the years 1962 and 1963; the purchase journal for the period from March 1962 through August 1963; and various cancelled checks issued to many different suppliers.

■ Although a search is validly made as incidental to a lawful arrest, the items which may be seized are limited to such things as the means and instrumentalities of the crime, fruits of the crime, weapons and contraband. Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). Defendant was arrested upon a complaint charging one specific crime. Since the government seeks to justify the items seized on the grounds they were means and instrumentalities, it is necessary to determine initially what are the means and instrumentalities of the crime for which defendant was arrested. In United States v. Stern, 225 F.Supp. 187, 192 (S.D.N.Y.1964), Judge Bryan of this Court ruled that not every article which plays a role in the commission of a crime is a means or instrumentality, but rather it must appear that the article seized "played a *significant* role in the commission of the crime alleged." Defendant argues that the "only means and instrumentality of the crime charged against the defendant in this complaint consists of the alleged false invoice which was submitted to the Government under New York Consumption Entry # 854154 and which has always been in the possession of the United States Government." [5]

United States v. Poller, 43 F.2d 911, 74 A.L.R. 1382 (2 Cir. 1930) is in point. There, a case of Swiss watch movements was imported into the United States under a false manifest describing them as chocolates. Customs agents, after arresting defendant for the illegal importation of the case, searched his office and seized a carrier's customs manifest for the case,

a letter from defendant to the carrier asking delivery of the particular case to his truckman, a notification by the shipper that the case was manifested to defendant, a bill of lading for the case, a letter from the exporter notifying defendant that the case would arrive, and an invoice for the case from the consignor. Also seized were invoices for earlier shipments of "chocolates," as well as miscellaneous check books. The Court held that all documents prepared, sent to, or received by defendant in connection with the specific illegal shipment to the United States were properly subject to seizure. The Court ordered suppressed all documents relating to previous shipments on the ground, *inter alia,* that the arrest was not made for a continuing scheme, but rather for a single importation. See United States v. Lindenfeld, 142 F.2d 829 (2 Cir.), cert. denied, 323 U.S. 761, 65 S.Ct. 89, 89 L.Ed. 609 (1944).

■ Thus, it appears that the means and instrumentalities of the crime charged in the complaint would include, *inter alia,* such things as the second invoice for the shipment, which was never shown to the Customs House, correspondence significant to use of the double invoice system, and checks for the full amount of the undervalued shipment. Bank statements and the statements of expenses for the European trips [6] are not means and instrumentalities of the crime alleged in the complaint.

■ In addition to the means and instrumentalities of the crime alleged in the complaint, materials relating to purchases from the three other shippers were seized, as well as material relating to other shipments from Rottgen. The government seeks to justify the seizure of this material on the ground that "incident to a valid arrest, agents may reasonably search for means and instrumentalities of crimes other than the one

5. Memorandum in Support of Defendant's Motion, p. 10.

6. The government has consented to return this item. Government's Memorandum in Opposition to Motion to Suppress, p. 8.

cited in the complaint." [7] Where a warrant of arrest is based upon the allegation of one crime and a search is made incidental to the execution of the warrant, the means and instrumentalities of a totally unrelated crime can be seized, so long as they are discovered through a search based only on the crime for which the arrest is made. In Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), an arrest was made under a warrant charging the mailing of forged checks. A search was made incidental to the arrest and, in examining a bureau drawer, an envelope containing draft cards was found. Defendant was convicted of unlawful possession and alteration of the draft cards. The Court, in part relying on the fact that defendant's possession of draft cards was a continuing crime, since they were government property, held the items properly seized.

In United States v. Abel, 258 F.2d 485 (2 Cir. 1958), aff'd, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), the Court of Appeals for this Circuit interpreted Harris as not limited by the fact that possession of draft cards was a continuing crime, holding that (258 F.2d at 497):

"[I]n a case such as the present one, where the trial court properly has been convinced that the motivation for the search is the hope of obtaining evidence of the offense for which the arrest is being made, the constitutional prohibition against unreasonable searches is not transgressed; and hence, when, during such a permissible search, * * * [means and instrumentalities of a crime, fruits, weapons and contraband] that were not searched for are in fact discovered no useful purpose would be served by prohibiting seizure of them if they tend to prove the commission of a crime even though the crime be unrelated to the crime for which the arrest is being made. * * *"

The Supreme Court, in affirming, stated that (362 U.S. at 238, 80 S.Ct. at 696):

"The other item seized in the course of the search of petitioner's hotel room was * * * a piece of graph paper containing a coded message. This was seized by Schoenenberger as petitioner, while packing his suitcase, was seeking to hide it in his sleeve. An arresting officer is free to take hold of articles which he sees the accused deliberately trying to hide. This power derives from the dangers that a weapon will be concealed, or that relevant evidence will be destroyed. Once this piece of graph paper came into Schoenenberger's hands, it was not necessary for him to return it, as it was an instrumentality for the commission of espionage. *This is so even though Schoenenberger was not only not looking for items connected with espionage but could not properly have been searching for the purpose of finding such items.* When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for. * * *" (Emphasis added.)

In United States v. Sorenson, 330 F.2d 1018 (2 Cir. 1964), a conviction based upon a seizure of narcotics was upheld even though defendant was arrested for homicide and, in the process of searching for the gun believed to be the murder weapon, the narcotics were discovered.

Unlike these cases, it is clear that here the agents, at the time they arrested Barbanell and searched his place of business, intended to search not only in connection with the crime for which Barbanell was arrested, but also in connection with other suspected crimes. Thus, the agents specifically looked for and seized materials relating to transactions with three other shippers, as well as other

shipments from Rottgen. The issue here is a narrow one: are means and instrumentalities of crimes other than those charged in the complaint upon which an arrest warrant is based properly seizable when the complaining agent suspected the commission of such other crimes at the time of getting the arrest warrant and conducted a search for material relating to them?

In Abel v. United States, supra, the Supreme Court dealt with this problem. Abel was arrested for a violation of the immigration laws. While conducting a search "to discover weapons and documentary evidence of [Abel's] 'alienage' " (362 U.S. at 224, 80 S.Ct. at 689), an agent noticed Abel trying to hide a piece of graph paper containing a coded message and seized it. On this basis, the Court upheld a denial of a motion to suppress, but took pains to point out that the agent was *not* "looking for items connected with espionage," and "could not properly have been searching for the purpose of finding such items." Id. at 238, 80 S.Ct. at 697. The Court of Appeals for this Circuit had similarly made the point in Abel that the arresting officers had not been specifically searching for the means and instrumentalities of espionage. 258 F.2d at 497.

This distinction between material deliberately sought and material happened upon by chance was also recognized in United States v. Lee, 308 F.2d 715 (4 Cir. 1962), cert. denied, 372 U.S. 907, 83 S.Ct. 720, 9 L.Ed.2d 717 (1963). There, defendant was arrested upon a warrant based on a grand jury indictment charging whiskey violations. In a search made after the arrest, a still was discovered and a subsequent indictment brought based upon this discovery. In upholding the conviction on the second indictment, the Court wrote (308 F.2d at 718):

> "It is true, of course, that officers effecting a lawful arrest have no right to set about in a general search for evidence of other crime than that for which the arrest was made, and they cannot use a lawful arrest as a

pretext for the conduct of such a general search for evidence of other crimes. Those principles have no applicability here, however, *for the only evidence is that the officers' initial intent was to search only for fruits of the earlier crimes,* and there is no suggestion whatever that the arrest pursuant to the warrant issued on the basis of the grand jury indictment was pretensive and effected in order to afford the officers an opportunity to search for evidence of other crime.

> "It is well settled that when the officers in the conduct of a lawful search discover contraband or other things subject to seizure, they need not ignore what they discover, *though the things discovered were not the things for which they were searching or for which they were entitled to search.* The fact the officers here could not have initiated a general search for the purpose of discovering evidence of crimes other than those for which the defendant was arrested does not mean they could not notice or, after notice, seize the contraband they discovered in the course of their lawful search, though the contraband had or might have had no connection whatever with the earlier offense which occasioned the arrest." (Emphasis added.)

Charles v. United States, 278 F.2d 386 (9 Cir.), cert. denied, 364 U.S. 831, 81 S.Ct. 46, 5 L.Ed.2d 59 (1960), where an arrest was made under a warrant charging assault and battery and a search was conducted to discover narcotics, supports the above distinction. There, the Court stated (278 F.2d at 388):

> "[A] search of the place of arrest for evidence of the crime for which the accused has been arrested is permissible. However, if police action is not justified by or connected with the arrest, *such as when a search of the place of arrest is designed to uncover evidence of a crime other than the one upon which the arrest was*

*made,* the further intrusion upon privacy cannot be tolerated. When a search has nothing to do with the arrest, it cannot be deemed incident to the accused's apprehension. Divorced from the search, the fact of arrest does not justify impairment of the right to privacy." (Emphasis added.)

In that case, the Court refused to suppress narcotics found on the body of the defendant on the ground that a search of the person of an accused is less restricted than a search of the surrounding premises.[8] See also Gilbert v. United States, 291 F.2d 586 (9 Cir. 1961), rev'd on other grounds, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962) (warrant of arrest issued on complaint charging forgery of a specific United States Treasury check; search and seizure of materials relating to numerous other government checks held illegal and materials suppressed).

The distinction between a deliberate search for material relating to other crimes and happenstance discovery of such material may pose, in some cases, difficult fact questions. However, the line has been drawn by the cases,[9] and here that line has clearly been crossed. The justification for the distinction and for confining searches to the crime for which an arrest is made is a weighty one. The Court of Appeals for this Circuit, in

United States v. Abel, supra, quoting from Judge Learned Hand's opinion in United States v. Poller, supra 43 F.2d at 914, phrased it as follows (258 F.2d at 497):

"'[T]he real evil aimed at by the Fourth Amendment is the search itself * * *.' Since the only proper motive which may impel government agents to conduct searches in connection with an arrest is the desire to obtain information which will be helpful in the prosecution of the crime for which the arrest is made, we well recognize that by placing 'limitations upon the fruit to be gathered [from such a search we] tend to limit the quest itself * *.' "

 Thus, I hold that the search here was in part improper, because it was designed to uncover evidence of crimes other than the one alleged in the complaint. Therefore, the only items which were properly seized were items which are means and instrumentalities of the crime alleged in the complaint. All other items are suppressed and should be returned. Any disputed items can be ruled on by the trial judge if sought to be introduced at trial.

Accordingly, the motion to suppress is granted in part and denied in part. So ordered.

8. It is not necessary here to discuss the validity of this distinction. See Taglavore v. United States, 291 F.2d 262, 265 (9 Cir. 1961).

9. An analagous problem arises with search warrants where material is seized which is not described in the warrant. United States v. Eisner, 297 F.2d 595 (6 Cir.), cert. denied, 369 U.S. 859, 82 S.Ct. 947, 8 L.Ed.2d 17 (1962); Johnson v. United States, 110 U.S.App.D.C. 351, 293 F.2d 539 (1961), cert. denied, 375 U.S. 888, 84 S.Ct. 167, 11 L.Ed.2d 118 (1963);

and Bennett v. United States, 145 F.2d 270 (4 Cir.), cert. denied, 323 U.S. 788, 65 S.Ct. 314, 89 L.Ed. 628 (1944) hold valid such seizure, but it appears in these cases that the property was discovered by chance. However, some courts have indicated that deviations from a search warrant are improper. Woo Lai Chun v. United States, 274 F.2d 708, 79 A.L.R. 2d 999 (9 Cir. 1960); United States v. Coots, 196 F.Supp. 775 (E.D.Tenn.1961); see Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927).