William Edwin ADAIR, Appellant,

v.

The STATE of Texas, Appellee.

No. 40795.

Court of Criminal Appeals of Texas.

March 27, 1967.

Rehearing Denied May 15, 1968.

Charles W. Tessmer, Henry J. Novak, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., Cecil Emerson, Russell Ormesher and Kerry P. Fitzgerald, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

DICE, Judge.

The conviction is for unlawfully carrying a pistol; the punishment, a fine of $101.

Trial was before the court, a jury being waived, upon appellant's plea of not guilty.

The evidence shows that the pistol was recovered from underneath the arm rest in the middle of the front seat of appellant's automobile by a City of Dallas police officer on the occasion of his arrest for a moving traffic violation.

It was further shown that prior to the search, the appellant "kept getting in front" of the officer as he walked toward the automobile, which actions aroused the officer's suspicions and indicated to him that appellant was trying to hide something.

In his brief, appellant urges one ground of error, designated as a proposition of law, which is as follows:

"The search of the defendant's automobile was unreasonable in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States for the reason that said search was not based upon probable cause."

Recently, in Lane v. State, Tex.Cr.App., 424 S.W.2d 925, Cause No. 40,222, opinion delivered April 12, 1967, not yet reported, this court overruled a similar contention in upholding the search of an automobile, incident to the arrest of the driver for a traffic violation, which led to the finding of a pistol in the glove compartment.

We adhere to such holding, and overrule appellant's contention.

The judgment is affirmed.

## DISSENTING OPINION

ONION, Judge.

On the record before us I must dissent to the affirmance of this case for the evidence clearly demonstrates that the arrest of the appellant for the traffic offense of changing lanes without properly signaling was a pretext to enable the arresting officer to search the appellant and his car. Therefore, I am convinced the search was unreasonable.

Further, I cannot agree that we can continue to hold that a lawful arrest for a minor traffic violation will ipso facto authorize a search of the driver and the vehicle, without ever questioning its reasonableness. The law is constantly changing, and certain limitations upon the "incident to arrest" exception to the commands of the Fourth Amendment, United States Constitution, and Article I, Sec. 9, Texas Constitution, Vernon's Ann.St., have developed.[1] See Grundstrom v. Beto, D.C., 273

1. In Amador-Gonzalez v. United States, the Court said:
   "A search incident to an arrest must have as one or more of its purposes the discovery of (1) the fruits of the crime; (2) instrumentalities used to commit the crime; (3) weapons or like material which put the arresting officer in danger or might facilitate escape; (4) contraband, the possession of which is a crime (Preston v. United States, 1964, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777; Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed.2d 145), and, by a recent decision, (5) material which constitutes evidence of the crime

   or evidence that the person arrested has committed it (Warden v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782)."
   Further, in Grundstrom v. Beto, it was said:
   "Limitations on the exception have developed as to the character of the articles sought for so that only (1) fruits of or implements used to commit the crime for which the accused was arrested, (2) items under the immediate control of the accused which it is unlawful for him to possess, (3) visible instruments of a crime at the scene of the arrest, (4) weapons by which the escape of the accused might be affect-

F.Supp. 912; Amador-Gonzalez v. United States, 391 F.2d 308 (5th Cir., No. 23,480—January 10, 1968). We are blinking at reality to continue to say that a mere traffic violation in and of itself will always justify a subsequent search of the vehicle involved, and that the search is reasonable per se whether such search is related to the traffic offense or not. The validity of an arrest does not always legitimate a search. General or exploratory searches are condemned even when they are incident to a lawful arrest. United States v. Rabinowitz, 339 U.S. 56, 62, 70 S.Ct. 430, 94 L.Ed. 653; Carlo v. United States, 2d Cir., 286 F.2d 841, 846.

When the prosecution relies upon a recognized exception to the Fourth Amendment requirement that no search be conducted in absence of a search warrant based upon probable cause, the burden is upon it to show the need for making use thereof. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59.

The case at bar, as the facts will reflect, does not come within the "plain sight" exception established in Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231, which rule permits an officer to investigate and seize property visible to him without a search, if he is lawfully in a position enabling him to see the object seized. See also Nunez v. United States (5th Cir.) 370 F.2d 538.

Neither can it be that the search in question comes within the doctrine or exception permitting a warrantless search of a vehicle not incident to arrest when an officer has probable cause to believe that the vehicle is being used to carry contraband. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

Recognizing this, the State, in the case at bar, relies solely upon the "incident to arrest" exception to justify the search and cites only Lane v. State, Tex.Cr.App., 424 S.W.2d 925 (No. 40,222).[2]

We now turn to the facts of the case at bar. The only witness called by the State was Officer P. G. Brown, Dallas Police Department. The appellant did not testify or offer other witnesses. It is observed that by agreement the motion to suppress and the trial on the merits were heard together. The affidavit of the appellant was offered in connection with his motion to suppress. See Article 28.01, Vernon's Ann.C.C.P.

Officer Brown related that at 2:15 a. m. on July 7, 1966, he was talking to the owner of a lounge or bar in the 4300 block of Bryan Street with whom he was acquainted and who had in his possession a large sum of money. Officer Brown agreed to take him home. As Brown began to back out

ed, and (5) mere evidence of the crime for which he was arrested, are subject to seizures. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Carroll v. United States, supra, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Warden, Maryland Penitentiary v. Hayden, 287 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)."

2. I voted with the majority in Lane v. State, supra, but I did not do so on the basis that a general exploratory search following a traffic arrest was valid absent special circumstances. Neither did I understand the majority to so hold, though the decision was thus characterized by the dissent and since then by the Court in Grundstrom v. Beto, supra. To decide the case at bar, without discussing the circumstances surrounding the arrest as the majority has done, serves only to heighten the illusion of the characterization. My reason for joining the majority in Lane was my concern about the safety of the officer under the rather limited factual situation we were presented by stipulation. I did not feel that the arresting officer's right to search for weapons to prevent escape or for his own protection should be limited merely because he failed to conduct the search by the "numbers" or according to Hoyle. Perhaps my understanding of the meaning of Lane was wrong.

of his parking place in his unmarked police vehicle he observed an open 1965 Lincoln Continental convertible automobile drive past and speed up after the driver had looked towards him. After receiving a negative response to his inquiry if the lounge owner knew the driver, Brown began to follow the automobile.

Brown testified that he followed the Continental convertible for six blocks on Bryan Street and after a turn for eight or nine blocks on Washington Street; that during this time the driver (later identified as the appellant) kept looking at him either in the rear view mirror or by turning around; that he (Brown) did follow appellant's automobile on Bryan Street without turning on the car lights of his unmarked police vehicle; that after turning on to Lemmon Avenue appellant changed lanes in the 2700 block thereof without giving a signal indicating such change; that at such time he turned on his red lights (recessed in the grill of the unmarked vehicle), blew his horn, and appellant stopped his automobile.

Officer Brown further related that at this time the appellant, who was alone, got out of the convertible and walked back to the police vehicle, inquired of Brown if he knew what he was doing and threatened to get Brown's job; that the appellant lifted up his badge and wrote the badge number down on a pad with a pencil; that appellant repeatedly inquired about the identity of the other person in the police car and his authority to be there; that after several requests the appellant produced his driver's license; that he (Brown) called the dispatcher and determined that the appellant was not a wanted person and that the convertible was not stolen; that these events occurred prior to the search of appellant's automobile which revealed the pistol.

When pressed for a definite answer, Brown stated that he did not form the opinion that the appellant was drunk or under the influence of drugs at the time, though he did observe the appellant had used a strong shaving lotion.

Brown related that the appellant had kept getting in front of him as he walked towards the convertible but that such actions did not indicate to him and he did not believe appellant was trying to prevent a search of the convertible; that he had no difficulty with the appellant and that he (Brown) "just kept laughing and trying to be jolly"; that appellant's automobile was a convertible and that the top and the windows were down at the time of the search.

Brown further testified that during the search of the automobile he found .22 cal. shells in the glove compartment after he opened it and a loaded .22 cal. German-made revolver after he lifted up the arm rest in the front seat; that at the time of such discovery appellant was standing right behind him to his right; that appellant did not consent to the search of his automobile.

Brown's testimony further shows that he did not tell the appellant that he was under arrest until the pistol was found and that he did not search appellant's person until after he had searched the automobile; that the appellant was placed in jail for "investigation of CPW" and "for improper change in lanes with no signal"; that no arrest for speeding or other offenses were filed and that he would have filed any other violations observed. Brown further testified that at the time of the arrest that he did not know the appellant and had never received any information concerning the appellant; that he had not received any information that any crime had been committed.

The record reflects no discussion between appellant and Brown as to the traffic offense itself. With regard to the purpose for which the search was actually made, it is interesting to note that Brown testified that shortly after he had stopped the appellant he informed him to the effect, "I'd like to look inside your car, sir."

Particularly revealing is the following excerpt taken from the transcription of the court reporter's notes:

"Q. * * * Were you watching to see if he would make some kind of traffic violation so you could stop him?

"A. I was watching any unusual moves he might have made.

"Q. And for the blocks you went you didn't notice any violation until you saw him change lanes?

"A. That is correct, except—

"Q. And, I suppose you had no prior knowledge as to who the driver of the car was or where he came from?

"A. No, sir, I did not."

The record reflects that Officer Brown was a member of the Radio Patrol, but there is no showing that his principal duty was traffic control in his unmarked police vehicle. There can be, of course, no question about his authority to arrest for traffic violations. See Article 6701d, Sec. 153, Vernon's Ann.Civ.St.

It is well established, though, that while an arrest may be lawful, the proceeds of an incidental search will be inadmissible if the court finds the arrest was merely a convenient excuse or pretext for conducting the search. United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877; Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Taglavore v. United States, 9 Cir., 291 F.2d 262; Worthington v. United States, 6 Cir., 166 F.2d 557; Henderson v. United States, 4 Cir., 12 F.2d 528; United States v. One 1963 Cadillac Hardtop, D.C., 224 F.Supp. 210; United States v. Pampinella, D.C., 131 F.Supp. 595; People v. Wolfe, 5 Mich. App. 543, 147 N.W.2d 447 (1967); Barnes v. State, 25 Wis.2d 116, 130 N.W.2d 264.

Few motorists can drive any substantial distance without committing some minor infraction of the traffic codes. See Brinegar v. State, 97 Okl.Cr. 271, 262 P.2d 464, 474. Therefore, peace officers find the traffic violation the most convenient front since it provides the greatest potential for arrest. Consequently, an officer lacking sufficient cause to arrest one suspected of a criminal offense, or about whom he is merely suspicious, will frequently look to traffic laws as a means of stopping and searching the person and his vehicle for evidence of a more serious offense. In such instances, apart from the fact that an incidental search for evidence unconnected with the offense for which the arrest was made is generally not permissible, Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Gilbert v. United States, 9 Cir., 291 F.2d 586, the search fails because it is based upon a sham or pretext arrest. See State of Montana v. Tomich, 9 Cir., 332 F.2d 987; State v. Michaels, 60 Wash.2d 638, 374 P.2d 989; Huebner v. State, 33 Wis.2d 505, 147 N.W.2d 646.

In Taglavore v. United States, supra, it was observed:

"Normally one's person or property may not be searched unless the authorities conducting the search have a search warrant which has been issued by a magistrate upon at least a showing of probable cause. Certain well-established exceptions exist to this basic rule. One such exception, within which the Government claims the instant case falls, is that incident to a valid arrest the person arrested may be searched without warrant. Thus where one has been legally arrested for the commission of a crime his person and, in most cases, his immediate surroundings at the time of arrest may be properly searched. The main purpose of this exception is to facilitate discovery of various elements and evidence of the crime for which the accused is being arrested, and also to remove weapons or other instrumentalities which might be used to resist the officers or for escape or similar purposes. If the search happens to uncover evidence of

crimes other than the one for which the accused has been arrested, this evidence may also be used against him in prosecutions for other crimes so discovered. Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. \* \* \* However, there is one fixed and essential prerequisite to all of these searches: in each case there must be a valid, bona-fide arrest to which the search is merely incident. Where the arrest is only a sham or a front being used as an excuse for making a search, the arrest itself and the ensuing search are illegal. Worthington v. United States, 6 Cir.; 1948, 166 F.2d 557; Henderson v. United States, 4 Cir., 1926, 12 F.2d 528, 51 A.L.R. 420. 'An arrest may not be used as a pretext to search for evidence.' United States v. Lefkowitz, 1932, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877. To put it in other words, the *search must be incident to the arrest, and not vice versa.*"

In the case at bar the traffic arrest turned into an arrest for unlawfuly carrying a pistol only *after* the search. Until that time there was no probable cause to believe that the appellant had a pistol in his vehicle and no probable cause to make an arrest for that reason. In Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134, the court held that the defendant's arrest took place when the officers stopped his car, even though a formal arrest was made at a later time, and the "fact that afterwards contraband was discovered is not enough" to legitimatize the search.

In the instant case, all the circumstances disclose that the arrest must be viewed as a subterfuge for a search for evidence, and on that ground alone, the evidence should have been suppressed. Here the officer did not know the appellant and had not received any information concerning him, nor had he received any report of a crime. After following him some fourteen to eighteen blocks, one of the first things the officer indicated to the appellant was his desire to search the car. And the search was continued even after the appellant had identified himself, and the officer had learned that the car was not stolen and that the appellant was not wanted. There was no direct testimony that Officer Brown was looking for a weapon or that he even suspected the existence of one. It is obvious that he conducted a general exploration for whatever might turn up following an arrest upon a convenient charge. See Collins v. United States, 289 F.2d 129 (5th Cir.—1961); State v. Chinn, 231 Or. 259, 373 P.2d 392, 395 (1962). The State's brief points to the hour and the "suspicious" actions of appellant. Speeding up when another automobile begins to back into the street, looking back at an unlighted and unmarked car following at that hour of the morning appears to be normal reactions of a motorist rather than suspicious actions of a criminal. The acts of the appellant after he was stopped appear to be that of an indignant citizen rather than furtive movements in connection with suspicious objects.

Suspicion alone does not rise to the level of probable cause and is an insufficient ground on which to base searches and seizures without a warrant. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

The fact that the officer's suspicions were subsequently confirmed by the results of his search is clearly not sufficient to save an otherwise illegal search. Wong Sun v. United States, supra; Henry v. United States, supra; Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; State v. Scanlon, 84 N.J.Super. 427, 202 A.2d 448; State v. Campbell, 97 N.J.Super. 435, 235 A.2d 235.

If warrantless arrests for traffic offenses are used to search those merely suspected of crime or about whom the officer is merely suspicious, then mockery is made out of the Fourth Amendment and its guarantees.

It is our duty to detect and prevent such misuse of the legal processes.

I would reverse the case on this ground alone.

Returning now to the holding of the majority that a search incident to an arrest, assuming no improper motivation, is reasonable per se, it is noted that the rule has been severely criticized by legal writers. See Simeone, Search and Seizure, Incident To Traffic Violations, 6 St.Louis Univ. L.J. 506 (1961); Note, Search and Seizure —Search Incident To Traffic Violations, 1959 Wis.L.Rev. 347 (1959); 4 Willamette Law Journal 247 (1966); 17 Baylor L.Rev. 312, 321 (1965); 28 Tex.B.J. 93, 136 (1965); See also 14 Hastings Law Journal 459 (1963); 9 Buffalo L.Rev. 382 (1960). Cf. 7 St.Louis Univ.L.J. 1 (1962).

I would be the first to agree that a uniform rule permitting a search in every case of a valid arrest, even for minor traffic infractions, would greatly simplify our task and that of all law enforcement agencies. "Such an approach would preclude consideration of the reasonableness of any particular search, and so would take away the protection that the constitution is designed to provide." People v. Watkins, 19 Ill.2d 11, 166 N.E.2d 433, 437 (Ill.—1960).

Brinegar v. State, 97 Okl.Cr. 271, 262 P.2d 464 (1953) was one of the cases to question the use of the "incidental search" rule in a situation involving a traffic arrest. The court, after examining previous decisions involving similar searches and seizures, found it could not agree with the long line of previous authority which had, almost without exception, upheld such searches merely because they were made incident to a lawful arrest. Instead, the court reasoned that the only true test was reasonableness under the circumstances, a test which could not be satisfied by only showing that the search was incidental to a lawful arrest when the offense was nothing more serious than a traffic violation.

There can be no question that an automobile is within the protection offered by the Fourth Amendment. Preston v. United States, 376 U.S. 364, 366, 84 S.Ct. 881, 11 L.Ed.2d 777; Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 4 L.Ed.2d 134; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

It is certainly well established now that in all cases involving searches of motor vehicles the test is reasonableness. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. This test hinges on the circumstances of each case. Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730; Taylor v. State, Tex. Cr.App., 421 S.W.2d 403. Whether the search upon which the seizure was predicated was reasonable is to be determined by applying federal standards of "reasonableness". Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. See Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933.

When the exception "incident to lawful arrest" comes into play, the limitations on the exception which have developed and which are noted in footnote #1 must be considered in determining reasonableness.

The present state of the law is well summarized in a recent publication of the FBI Enforcement Bulletin as follows:

"As the foregoing discussion has indicated, the search incident to arrest must be confined to fruits, instrumentalities, contraband, and mere evidence of the crime for which the arrest was made and to weapons of injury or escape. Abel v. United States, 362 U.S. 217, 238 [80 S.Ct. 683, 4 L.Ed.2d 668] (1960); Harris v. [United States], 331 U.S. 145 [67 S.Ct. 1098, 91 L.Ed. 1399] (1947); Agnello v. [United States], 269 U.S. 20, 30 [46 S.Ct. 4, 70 L.Ed. 145] (1925); Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294 [87 S.Ct. 1642, 18 L.Ed.2d 782] (1967); [United States] v. Barbanell [D.C.], 231 F.Supp. 200 (1960). The arrest merely serves the function of a search warrant for things seizable in

connection with that particular offense. Papani v. [United States, 9 Cir.,], 84 F. 2d 160 (1936) * * * Obviously, a search cannot be made where there is no tangible evidence connected with the arrest offense. That is usually the case where violations of motor vehicle codes are involved. With the exception of driving while under the influence of alcohol or narcotics, there are few traffic offenses in which any object other than the vehicle itself can be considered evidence of the crime. Thompson v. State, 398 S.W.2d 942 (Tex.Crim. [App.], 1966) ; Richardson v. State [163 Tex.Cr.R. 585], 294 S.W.2d 844 (Tex.Cr.1956) ; Brinegar v. State [97 Okl.Cr. 229], 262 P.2d 464 (Okla.1953) ; Church v. State [206 Tenn. 336], 333 S.W.2d 799 (Tenn.1960) ; State v. Taft [144 W.Va. 704], 110 S.E.2d 727 (W.Va.1959) ; See also, People v. Lujan, 141 Cal.App.2d 143, 296 P.2d 93 (1956) (arrest for driving while under influence of drugs held to support search of entire vehicle for narcotics). For this reason, the search incident to a traffic arrest is not permitted in most jurisdictions. State v. Michaels [60 Wash.2d 638], 374 P.2d 989, 992 (Wash.1962) ('A search of the automobile could reveal nothing useful in establishing the offense for which the defendant was arrested—failure to signal for a left turn—and there was no reason to suspect that he would attempt to flee with the aid of something that might be found in the trunk of his car.') ; Barnes v. State [25 Wis.2d 116], 130 N.W.2d 264 (Wis.1964) ('There are no fruits or instrumentalities connected with the offense of driving a vehicle with a defective tail light.') ; U. S. v. One 1963 Cadillac Hardtop [D.C.], 224 F. Supp. 210 (1963) ('In the case of a stop sign violation there is no fruit of the crime. The means whereby the crime was committed is the vehicle itself.') ; [United States] v. Tate, 209 F.Supp. 762 (1962) ('There are no fruits of speeding.') ; Travers v. [United States], 144 A.2d 889 (D.C.Mun. [App.] 1958)." Search of Motor Vehicles, 9th of Series, FBI Enforcement Bulletin, November 1967, pp. 19, 24, 25. See 10 A.L.R.3d 314.

I would in applying the above law to the case at bar further hold that there were no "special circumstances" (See footnote #1) which would have justified the search in question.

A. The instrumentalities and means by which the crime was committed.

In the case at bar the crime committed which gave rise to the search was a traffic offense, changing lanes without giving a signal. The means by which the offense was committed was the vehicle itself. The search of the interior of the automobile bears no relation to seeking the means by which a traffic offense was committed. Care should be taken to distinguish those cases in which the driver of a motor vehicle who has committed a traffic offense appears to be under the influence of an intoxicant wherein it is arguable that the officer has reasonable grounds for searching the car for liquor or drugs. Cf. Richardson v. State, 163 Tex.Cr.R. 585, 294 S.W.2d 844; Tabb v. State, 154 Tex.Cr.R. 613, 229 S.W.2d 628; Thompson v. State, Tex.Cr.App., 398 S.W.2d 942; Anderson v. State, Tex.Cr.App., 391 S.W.2d 54; Ybarra v. State, 160 Tex.Cr.R. 487, 272 S.W.2d 374. "These searches, however, find their justification in the fact that they were incident to an offense for which the officer had probable cause to arrest, i. e., driving under the influence of drugs or driving while intoxicated, offenses for which there exists means or instruments of commission." Grundstrom v. Beto, supra.

Further, there were no fruits of the offense of changing lanes without signaling which would justify the search, for such offense has no fruits.

B. Property by which the escape of the person may be effected.

An "officer should be permitted to take every reasonable precaution to safeguard his life in the process of making an arrest." State v. Riley, 240 Or. 520, 402 P.2d 741,

743 (1965). Nevertheless, to permit all searches incidental to an arrest to be justified on the theory that the officer is searching for weapons would be to allow wholesale fishing expeditions whenever a legal arrest is made. United States v. Tate, D.C., 209 F.Supp. 762.

If, from the totality of the circumstances presented to the officer he has reasonable grounds to believe that he is in danger of bodily harm or injury or that the person he encounters is armed or is dangerous, justification for a search for weapons exists. See United States v. Washington, D.C., 249 F.Supp. 40 (N.D.Ill.1965); People v. Thomas, 31 Ill.2d 212, 201 N.E.2d 413, cert. den. 380 U.S. 936, 85 S.Ct. 948, 13 L.Ed.2d 824 (1965); Brinegar v. State, 97 Okl.Cr. 229, 262 P.2d 464 (1953); State v. Scanlon, 84 N.J.Super. 427, 202 A.2d 448 (1964); Elliot v. State, 173 Tenn. 203, 116 S.W.2d 1009 (1938).

In the case at bar the appellant's person was not searched until after the search of the automobile revealed the pistol. At such time the officer had learned that the car was not stolen and that the appellant was not wanted. Officer Brown related that he had no difficulty with appellant and that he (Brown) "just kept laughing and trying to be jolly." The record does not show that Officer Brown had reason to believe that the appellant was armed or dangerous or that his person was in danger or that appellant might seek to escape. The search here cannot be justified for that reason. See State v. Michaels, 60 Wash.2d 638, 374 P.2d 989.

C. Property the possession of which is a crime.

"A search for contraband is reasonable when conducted incident to a traffic violation only when the arresting officer observes some occurrence other than the traffic offense itself which reasonably leads the officer to believe that the motorist possesses contraband." Grundstrom v. Beto, supra.

Unless there is some fact from which the officer can reasonably draw the belief that the motorist possesses contraband, a search for such articles is unreasonable. People v. Molarius, 146 Cal.App.2d 129, 303 P.2d 350; People v. Erickson, 31 Ill.2d 230, 201 N.E.2d 422; Sellars v. State, 237 Md. 58, 205 A.2d 296; People v. Carr, 370 Mich. 251, 121 N.W.2d 449.

In the case at bar there are no facts present from which Officer Brown could have derived such a belief, and the search cannot be justified as relating to contraband.

"Nor can the validity of the search be predicated upon a quest for mere evidence. There is no evidence of a traffic offense subject to seizure." Grundstrom v. Beto, supra.

For the reasons stated, I would hold that there is an additional ground which calls for reversal.[3] As to this last ground alone, in absence of a pretext, we may well have had an additional factor to consider had the State shown that the search followed an arrest for a traffic offense where the officer had determined prior to the search to take the appellant before a magistrate rather than issuing a written notice to appear in court as permitted in some cases by Article 6701d, Sec. 148, V.A.C.S. See Taylor v. State, Tex.Cr.App., 421 S.W.2d 403; 7 St.Louis Univ.L.J. 1 (1962).

The question of whether a person and his vehicle may be searched following a traffic violation is a complex one that has been treated in many different fashions by various courts from the time the automobile with its many attendant operating regula-

3. It is observed that Judge Wisdom in Amador-Gonzalez v. United States, supra, stated his personal opinion as follows: "I would go further. I would hold that, pretext or no pretext, a lawful arrest of an automobile driver for a traffic offense provides no lawful predicate for the search of the driver or his car—absent special circumstances."

tions first appeared upon the American scene.

We must bear in mind that the traditional function of an appellate court opinion to furnish precedent and guidelines to the bench and bar has had added to it a new dimension, at least in criminal cases. Law enforcement officers and agencies have a vested interest in the appellate opinion in this day and age of change in the approach to criminal prosecution.

Since in my humble opinion we can no longer hold that all searches incident to a traffic offense are reasonable per se, we must, to the best of our ability, set guidelines for all concerned in this sensitive, developing and difficult area of the law.

I respectfully dissent.

MORRISON, J., says amen and joins in this dissent.