ELLIOTT *et ux. v.* STATE.

(*Jackson,* April Term, 1938.)

Opinion filed May 28, 1938.

MURCHISON & MANHEIM and ROGER G. MURRAY, all of Jackson, for plaintiffs in error.

W. F. BARRY, JR., Assistant Attorney-General, for the State.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Elliott and wife were convicted under an indictment charging transporting and possessing liquor and fined $100 each, and Homer Elliott was sentenced to serve thirty days in the County workhouse. Appealing they complain that (1) their arrest was unlawful, and (2) the search of their car was unauthorized, and that the testimony of the officers as to their discovery of the liquor was, therefore, inadmissible. The facts are thus fairly stated on the brief for the State:

"During the late afternoon of Christmas Eve, 1937, the defendants Homer Elliott and his wife, Mrs. Homer (Lucile) Elliott, accompanied by the wife's sister, were driving south on Highway No. 45 in the direction of Jackson, Tennessee. Mrs. Elliott was driving the automobile, which was a Studebaker 6 coupe.

"The highway upon which they were traveling runs south from Fulton, Kentucky, through Martin, Milan, Medina, etc., and ten miles north of Jackson it converges with Highway No. 5, which runs south from Union City, Trenton, Humboldt, etc. At this point, known as Fair-

view, or Threeway, were Sergeant Townes and patrolman Cook of the Tennessee Highway Patrol. These officers were on duty, examining driver's licenses and also seeing that vehicles were brought to a proper stop on Highway 45 before entering the intersection of the two highways.

"The officers testified that they observed defendant's car as it came up to the intersection of the highways and that a stop was made there as required by law before the car entered the intersection. There was no violation of any traffic law or rule, or reckless or fast driving to cause them to stop defendants' car. There was no outward appearance of the car which would tend to attract their attention or suspicion, except the possible fact that it did not bear a Madison County number plate.

"Sergeant Townes and Patrolman Cook immediately followed defendants' car in the direction of Jackson and passed it on the way to town. The officers proceeded to the small settlement of Hicksville, which is located on the Jackson corporation line. They there stopped their car at a filling station two or three minutes until defendants' car passed, and it is their testimony that when defendants' car passed them it was running at a rate of forty to forty-five miles per hour through this settlement of Hicksville, which they regarded as a restricted zone under the provisions of Chapter 245 of the Public Acts of 1937, and *prima facie* evidence of reckless driving on the part of defendant Mrs. Elliott under the terms of said Act.

"The officers followed defendants' car only a short distance and stopped it after it had turned off on Fairmont Avenue, a cross-street.

"After stopping the car Patrolman Cook remained in the officers' car and Sergeant Townes went to the de-

fendants' car, where he asked to see the driver's license. According to his testimony, he examined Mrs. Elliott's driver's license, found it regular and then asked her why they were driving forty or forty-five miles an hour through the settlement of Hicksville coming into Jackson. Mrs. Elliott replied that she didn't realize they were driving that fast and Sergeant Townes then said that he would have to place her under arrest for that offense. Having made the arrest he then attempted to open the compartment in the rear of the coupe and found it locked. He asked both Mr. and Mrs. Elliott for the key and both of them said that they did not have it, whereupon he took the key from the ignition, unlocked the rear of the car and there found some ten cases of liquor.''

Counsel for plaintiffs-in-error say, first, that the officers apparently suspected, for reasons not appearing, that the car contained liquor and that they stopped their car at the point shown hoping to find some pretext upon which to make an arrest; that this arrest was not *bona fide,* that the defendants had violated no traffic law or regulation.

Conceding the plausibility of the insistence that the arrest was itself unlawful, we find it unnecessary to determine that question, in view of the conclusion hereinafter announced on the second complaint made on behalf of the plaintiffs-in-error, that the search which disclosed the liquor exceeded proper limitations, even if the arrest for this traffic violation was lawful.

The Attorney-General cites the following statement of the general rule:

''When one is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have, *and which may be used to prove*

*the offense,* may be seized and held as evidence in the prosecution. *Carroll* v. *United States* (1925), 267 U. S., 132, 45 S. Ct., 280, 69 L. Ed., 543, 39 A. L. R., 790.

"The instrumentalities used in the crime may be seized as incident to a lawful arrest. *United States* v. *Chin On* (D. C., 1924), 297 F., 531."

The Attorney-General also quotes from 56 C. J., 1198, the following:

"It is well settled that a search without a search warrant is justifiable where it is incident to a lawful arrest, and a seizure, on such a search, *of evidence related to the crime,* as well as the instruments of its commission and of means and implements of escape, are likewise permitted on such a search.

"*Search of Person.* As an exception to the general rule it has been recognized both in English and American law no search warrant is necessary to search lawfully arrested persons *for evidence connected with the crime.*"

The italics in the foregoing excerpts are ours. The words italicized are significant, as hereinafter shown.

This case presents the question, not heretofore directly dealt with in any reported case in this State, *to what extent* is a search without a warrant of the person and property of an accused justified by a lawful arrest for an alleged breach of the peace,—here a violation of a traffic law,—committed in the presence of the officer.

We italicize the significant words, "to what extent", the only question open being as to *the extent* of the permissible search. We have no statute authorizing a search by an arresting officer without a search warrant. Such authority is found only in the common law. We have, however, a statute authorizing a magistrate to have a prisoner searched, which prescribes limitations which ac-

cord with those indicated as proper by the common law rulings applicable to officers, and there is perhaps reason for treating, by analogy, this statutory statement of the proper rule governing searches by magistrates as a legislative declaration touching the principle involved as also applicable to officers. This statute, Code, Section 11914, reads as follows:

"When a person charged with a felony is suspected by the magistrate before whom he is brought to have upon his person a dangerous weapon, or anything which may be used as evidence of the commission of the effense, the magistrate may direct him to be searched in his presence, and such weapon or other thing to be retained, subject to the order of the court in which the defendant may be tried."

■■ Assuming always the predicate of a precedent lawful arrest, the common law is universally recognized to authorize a search by the arresting officer of the person and effects of the prisoner for the purpose of seizing such articles as (1) might be used to effect an escape, such as weapons or tools, keys and the like, or (2) as might tend to evidence his guilt of *the offense for which the arrest has been made.* It will be observed that this limitation of the right of search appears in our statute above quoted. Consistently, the accepted definition of "search", given by Bouvier's Law Dictionary, Rawle's Third Rev., reads: "An examination of a man's home, premises, or person, for the purpose of discovering proof of his guilt in relation to some crime or misdemeanor of which he is accused."

In *Ballou* v. *Commonwealth,* 195 Ky., 722, 243 S. W., 922, the Court states the rule to be that (page 923), "When an officer makes a lawful arrest . . . he is

authorized to make a search of the arrested party's person for any weapon or other thing that might enable the prisoner to escape." This is the rule applied in our case of *Goodwin* v. *State,* 148 Tenn., 682, 257 S. W., 79, where, when the arrest was on a charge of drunkenness, and when incidentally to such a search of the accused person a weapon was discovered, it was held that he might be prosecuted for carrying a concealed weapon. And in the leading Kentucky case of *Youman* v. *Commonwealth,* 189 Ky., 152, 224 S. W., 860, 13 A. L. R., 1303, it was held that the officer may search for and seize "any property connected with the offense for which he is arrested that may be used as evidence against him." (Page 863.)

In Baldwin's edition of Bouvier, under the title "Prisoner", it is remarked that, "Throughout the United States there have grown up abuses in the treatment of prisoners, particularly by the detective force of larger cities, which amount in those cases to a practical denial of the plainest constitutional guaranties of liberty of person and property and of freedom from unreasonable searches. Among these abuses have been the illegal searches of the persons of prisoners arrested on bare suspicion, who are often the victims of the mere whim of the arresting officer."

In our leading search and seizure case, *Hughes* v. *State,* 145 Tenn., 544, at page 566, 238 S. W., 588, at page 594, 20 A. L. R., 639, it was said:

"Provision is made by statute in this state for searches in two cases only: One by search warrant issued upon affidavit showing probable cause (Shannon's Code, sections 7296-7311); and the other when a person charged with a felony is suspected by the magistrate before whom he is brought to have upon his person a dangerous weap-

on, or anything which may be used as evidence of the commission of the offense, the magistrate may direct him to be searched in his presence (Shannon's Code, section 7312). However, searches are allowable under the common law in cases where persons are lawfully arrested. 2 R. C. L., 468. In the text cited it is said:

" 'An officer making an arrest has authority to search the person of his prisoner, even against his will; but a search is justifiable only as an incident to a lawful arrest, and if the arrest is unlawful the search is also unlawful. Thus an officer acting without a warrant for an arrest and without attempting to make an arrest is not justified in making a search of a person upon mere suspicion that he has committed a crime. The officer making an arrest and search of the person of the prisoner may take from him any dangerous weapons, or anything else that he reasonably may deem necessary to his own or the public safety, or for the safe-keeping of the prisoner, and take into his possession the instruments of the crime and such other articles as may be of use as evidence on the trial, or which might enable the prisoner to escape.' "

■ It will be seen from the foregoing that in declaring the authority of the arresting officer to search and seize, the authority is always limited to (1) offensive weapons and tools of escape and (2) evidence of guilt of the offense for which the lawful arrest has been made. And see 6 Corpus Juris Secundum, Arrest, p. 622, section 18, where the principles stated are supported in the text and cases cited. Also, *Dean* v. *State,* 37 Okl. Cr., 396, 258 P., 812, and *State* v. *McBride,* 327 Mo., 184, 37 S. W. (2d), 423, cases specially relied on for plaintiffs-in-error.

■ So tested, conceding the good faith and reasonableness of the grounds of the officer making this arrest

for reckless driving, we are constrained to hold that the officer exceeded his authority in searching the rear compartment of the car wherein he found the liquor for possession and transportation of which this prosecution was brought. This search, and the articles thus discovered, had no reasonable relation to the offense for which the arrest was made. The articles searched for and found afforded no evidence of reckless driving. The search, quite obviously, was not for the purpose of disarming the prisoners, or securing proof of their guilt of that offense. The evidence thus sought and obtained was of another and wholly unrelated offense, and it having been obtained by an unlawful search, the objection to the testimony of the officers should have been sustained.

It will be borne in mind that this is not a case in which evidence of the commission of another and independent offense has been discovered by the arresting officer incidental to the exercise of a search within recognized authorized limits, as for example, in the *Goodwin Case, supra,* where a concealed weapon was found on the person, or where liquor was found, as in other of our cases. We adhere to the rule heretofore followed by this Court that, when the scope of the search is confined within lawful limits, discoveries of independent offenses may be testified to in prosecution of such offenses.

It results that the judgment must be reversed.