(No. 35175.—<span style="background:black">    </span>

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES WATKINS, Plaintiff in Error.

*Opinion filed March 31, 1960.*

12

DAILY, J., specially concurring.

GETER & GETER, of Chicago, (HOWARD D. GETER, SR., HOWARD D. GETER, and BENJAMIN C. DUSTER, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, and WILLIAM H. SOUTH, Assistant Attorneys General, and FRANCIS X. RILEY, and EDWIN A. STRUGALA, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, James Watkins, was tried in the criminal court of Cook County upon a charge of possession of "policy" slips. Count 1 of the indictment charged him with possession; count 2 repeated that charge and also charged a former conviction for the same offense. (Ill. Rev. Stat. 1959, chap. 38, par. 413.) He was first found guilty on count 2 of the indictment, and then, after he had applied for probation, the prosecution's motion to *nolle prosse* count 2 was allowed and he was sentenced to six months in the county jail on count 1.

Upon the merits the defendant contends that the judgment must be reversed on two grounds: first, because his motion to suppress evidence taken from him in violation of his constitutional rights was denied, and second, because the original finding of guilty on count 2 amounted to a finding of not guilty on count 1, the count upon which he was ultimately sentenced. Before we reach these contentions, however, it is necessary to determine whether this court, or the Appellate Court, has jurisdiction to review this misdemeanor conviction upon a writ of error directly to the trial court. The People have suggested that the case belongs in the Appellate Court, and in support of that suggestion they have first directed our attention to the statutes that deal with the distribution of appellate jurisdiction. Although the jurisdictional problem is a familiar one, we do not find that it has heretofore been discussed in terms of the historical setting of the relevant statutes, and their precise language.

Section 11 of article VI of the constitution of 1870 authorized the establishment of appellate courts "to which such appeals and writs of error as the general assembly may provide may be prosecuted from circuit and other courts, and from which appeals and writs of error shall lie to the supreme court, in all criminal cases, and in cases

in which a franchise or freehold or the validity of a statute is involved, and in such other cases as may be provided by law."

The Appellate Court Act of 1877 created the Appellate courts. Section 8 of that act provides that they shall have jurisdiction of "all matters of appeal, or writs of error * * * in any suit or proceeding at law, or in chancery other than criminal cases, *not misdemeanors,* and cases involving a franchise or freehold, or the validity of a statute. Appeals and writs of error shall lie * * * directly to the Supreme Court, in all criminal cases and in cases involving a franchise or freehold or the validity of a statute." (Laws of 1877, p. 70, 71.) The italicized words were added by amendment in 1887. (Laws of 1887, p. 156.) With that exception, the relevant provisions of the original section remain unchanged. Ill. Rev. Stat. 1959, chap. 37, par. 32.

By another act adopted in 1877, section 88 was added to the Practice Act of 1872. That section provided that appeals and writs of error "in all criminal cases and cases in which a franchise or freehold or the validity of a statute is involved shall be taken directly to the supreme court in case the party appealing or prosecuting such writ of error shall so elect." In 1879, section 88 was amended, and the following sentence concerning the distribution of jurisdiction between the Supreme and Appellate courts was enacted: "Appeals from and writs of error to circuit courts * * * in all criminal cases, below the grade of felony, shall be taken directly to the appellate court, and in all criminal cases above the grade of misdemeanors, and cases in which a franchise or freehold or the validity of a statute or construction of the constitution is involved; and in all cases relating to revenue, or in which the State is interested as a party or otherwise, shall be taken directly to the supreme court." (Laws of 1879, p. 222.) That sentence (with an additional clause concerning cases involving the validity

of municipal ordinances) was carried forward into section 118 of the Practice Act of 1907. Laws of 1907, p. 467.

When the Civil Practice Act became effective in 1934, the single sentence of the 1907 act was split into two parts. The provisions dealing with criminal cases were transferred verbatim to division XV of the Criminal Code and became section 14 of that division . (Ill. Rev. Stat. 1959, chap. 38, par. 780½.) The balance of the jurisdictional provisions were incorporated without change in section 75 of the Civil Practice Act. Ill. Rev. Stat. 1933, chap. 110, par. 75.

These multiple provisions are not completely consistent. Section 8 of the Appellate Court Act seems to provide that the Supreme Court has jurisdiction, on direct review, "in all criminal cases," and that the Appellate Court has concurrent jurisdiction in misdemeanor cases. On the other hand, section 14 of division XV of the Criminal Code seems to provide for direct review of all misdemeanors in the Appellate Court. Neither of these results has followed. The General Assembly has not regarded the Appellate Court Act as a significant jurisdictional control, for when it has redistributed jurisdiction from time to time, it was done so by amending the Practice Act. It has made no attempt to include the changes so made in the Appellate Court Act. Compare Ill. Rev. Stat. 1959, chap. 37, par. 32, with chap. 110, par. 75.

Over the years this court, too, has looked to the provisions of the practice acts for its jurisdictional standards. (*People* v. *Clardy,* 334 Ill. 160, 163 (1929).) So it has taken jurisdiction to review misdemeanor convictions when the validity of a statute or a construction of the constitution was involved, (*People* v. *McGurn,* 341 Ill. 632 (1930); *People* v. *Humphreys,* 353 Ill. 340 (1933); *People* v. *McGowan,* 415 Ill. 375 (1953); *People* v. *Shambley,* 4 Ill.2d 38 (1954); *People* v. *Clark,* 9 Ill.2d 400 (1956); *People* v. *West,* 15 Ill.2d 171 (1958),) and has refused to exercise jurisdiction in the absence of those issues. *People* v.

*Basuris,* 360 Ill. 192 (1935); *People* v. *Harrison,* 397 Ill. 618 (1947); *People* v. *Estep,* 409 Ill. 125 (1951); *People* v. *Williams,* 3 Ill.2d 79 (1954).

The transposition of a part of the jurisdictional provision from the Practice Act to the Criminal Code has not been regarded as effecting any change in the distribution of jurisdiction between the Supreme Court and the Appellate courts. There is no suggestion in the contemporaneous literature that any change was intended. It is unlikely that the General Assembly thought that a redistribution was being made when no change was made in the words used and the only modification was the transposition of a part of one sentence from one act to another. In any case, the General Assembly appears to have acquiesced in the court's view of the situation, for since 1934 it has made no change in the jurisdictional scheme that is relevant to the present problem. Under these circumstances we adhere to the prior determinations of this court that this court has jurisdiction to review directly misdemeanor cases which involve the validity of a statute or a construction of the constitution.

The People also suggest that this court lacks jurisdiction because a construction of the constitution is not involved in the case. The defendant maintains that our jurisdiction is established by his contention that policy slips introduced into evidence at the trial were obtained from him by unreasonable search and seizure. In support of their position, the People state that the policy slips were seized only after the defendant had been arrested for a parking violation, that the legality of search and seizure incident to a valid arrest, even for minor misdemeanors, has been settled by prior decisions of this court, and, therefore, that the defendant's contention presents no debatable question requiring a construction of the constitution.

This position was expressed by the court in a few older decisions transferring illegal search cases to the Appellate Court. (See *People* v. *Hord,* 329 Ill. 117; *People* v. *Blenz,*

317 Ill. 639.) It is based, however, on the assumption that the boundaries of the protection provided by the unreasonable search and seizure provisions of our constitution may be determined by the declaration of one simple rule. It may be that the meaning of some constitutional provisions can be authoritatively settled in that way. But that is emphatically not true of the great generalizations of the constitutions, State and Federal. Their meaning can be determined only by specific applications. This is particularly true of the constitutional provision involved in the present case. "What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches, and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. *Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 357." *United States* v. *Rabinowitz,* 339 U.S. 56, 63, 94 L. ed 653; cf. *People* v. *Tillman,* 1 Ill.2d 525, 530.

This approach to the jurisdictional problem is implicit in the host of cases involving searches incident to arrest where this court has taken jurisdiction on direct appeal. (See, *e.g., People* v. *West,* 15 Ill.2d 171; *People* v. *Clark,* 9 Ill.2d 400.) Despite the purported rule that such searches are proper, we acted on the assumption that each individual case raised debatable constitutional questions. It may be that some future cases will be so similar to others already decided that the issues they present must be regarded as settled. That is not, however, true of the case now before us, and we hold, therefore, that we have jurisdiction on direct appeal based on debatable questions requiring construction of the constitution.

To establish the validity of the search in this case, the People rely on *People* v. *Clark,* 9 Ill.2d 400, a unanimous decision of this court in which one of the grounds for sustaining a search of the person was that it had been made

in connection with an arrest for a traffic violation. The cumulative impact of subsequent cases, coupled with the nature of the traffic violation here involved, has caused the court to reconsider. The *Clark* opinion rests on reasoning that runs like this: (1) a traffic violation is a misdemeanor; (2) a police officer has a right to arrest when a misdemeanor is committed in his presence; (3) an arresting officer has the right to search the person of one whom he arrests. Each of these propositions, taken by itself and with the limitations imposed by its original context, is correct enough. But when they are combined, transplanted, and used to govern the interpretation of the constitution, they produce an improper result.

The constitution prohibits only unreasonable searches; it permits those that are reasonable. The critical issue in each case must be whether the situation that confronted the officer justified the search. That question can not be determined by an indiscriminate application of legal concepts that were evolved to meet quite different problems. A uniform rule permitting a search in every case of a valid arrest, even for minor traffic violations, would greatly simplify our task and that of law enforcement officers. But such an approach would preclude consideration of the reasonableness of any particular search, and so would take away the protection that the constitution is designed to provide. Other courts are in accord. They have refused to establish a uniform rule to govern all searches accompanying valid arrests, but rather have examined the nature of the offense and the surrounding circumstances to determine whether the search was warranted. Cf. *People* v. *Blodgett,* 46 Cal.2d 114, 293 P.2d 57; *Elliott* v. *State,* 173 Tenn. 203, 116 S.W.2d 1009; *People* v. *Gonzales,* 356 Mich. 247, 97 N.W.2d 16; See: Einhorn, The Exclusionary Rule in Operation, 50 J. Crim. L., C. & P.S. 144, 160 (1959); 1959 Wis. L. Rev. 347.

A search incident to an arrest is authorized when it is

reasonably necessary to protect the arresting officer from attack, to prevent the prisoner from escaping, or to discover fruits of a crime. But the violation involved in this case was parking too close to a crosswalk,—the kind of minor traffic offense that ordinarily results in a "parking ticket" hung on the handle of the door of the car, telling the offender that it is not necessary to appear in court if he mails in the amount of his fine. Such an offense does not, in itself, raise the kind of inferences which justify searches in other cases. Some traffic violations would justify a search. The total absence of license plates, for example, as in *People* v. *Berry,* 17 Ill.2d 247, could reasonably suggest a serious violation of the law, as could an obscured license plate upon a car being driven in the early morning hours, as in *People* v. *Esposito,* 18 Ill.2d 104. But when no more is shown than that a car was parked too close to a crosswalk or too far from a curb, the constitution does not permit a policeman to search the driver. To the extent that *People* v. *Clark,* 9 Ill.2d 400, and *People* v. *Berry,* 17 Ill.2d 247, conflict with these views, they are overruled.

The search that was made here can be justified, however, without relying solely upon the traffic violation. The arresting officers were members of the gambling detail. They knew the defendant and he knew them, because they had arrested him on previous occasions. They watched him park his car and saw him go into the building. He saw them at that time. He emerged twenty minutes later, but ran back into the building as soon as he saw that the officers were still there. Police officers often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals. With this in mind, we think that the circumstances made it reasonable for the arresting officers to assume that they were dealing with a situation more serious than a routine parking violation. The search of defendant's person after

his arrest did not, therefore, violate his constitutional right against unreasonable search and seizure, and the policy tickets obtained by the search were properly admitted in evidence.

The defendant contends that the trial court was powerless to enter a sentence upon count 1 of the indictment because the specific finding of guilty on count 2, without any finding on count 1, amounted to an acquittal on count 1. We rejected the same argument in *People* v. *Berry,* 17 Ill.2d 247, 252-53, a case argued by the same counsel, decided by the same trial judge, and involving an indictment and procedural circumstances identical to those in the present case. What was said in that opinion applies with equal force here. For the reasons there stated, it is our view that sentence was properly entered on the first count. The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DAILY, specially concurring:

While I agree that the search of defendant's person in this case was constitutionally permissible, I do not agree that something more than a valid arrest itself, whether it be for a felony or a misdemeanor, is necessary to bring a search of the person within constitutional standards.

In the landmark case of *Weeks* v. *United States,* 232 U.S. 383, 392, 58 L. ed. 652, 655, the Supreme Court said, without qualification or reservation, that the right has always been recognized under American and English law, "to search the person of the accused when legally arrested, to discover and seize the fruits or evidences of crime." Subsequent decisions, notably *Carroll* v. *United States,* 267 U.S. 132, 69 L. ed. 543, and *United States* v. *Rabinowitz,* 339 U.S. 56, 94 L. ed. 653, have recognized and reaffirmed the *Weeks case* as firmly cementing the principle that a search of the person of one lawfully arrested is not unreasonable, and that the taking into custody of personal articles in the immediate control of an arrested person is

not unlawful. (See also: *Blackford* v. *United States,* 247 F.2d 745; *United States* v. *Lassoff,* 149 F. Supp. 944.) In the *Rabinowitz case* the court said: "It is unreasonable searches that are prohibited by the Fourth Amendment. * * * It was recognized by the framers of the Constitution that there were reasonable searches for which no warrant was required. The right of the 'people to be secure in their persons' was certainly of as much concern to the framers of the Constitution as the property of the person. *Yet no one questions the right, without a search warrant, to search the person* after a valid arrest. The right to search the person incident to arrest has always been recognized in this country and in England. * * * *Where one had been placed in custody of the law by valid action of officers, it was not unreasonable to search him."* (339 U.S. at 60, 94 L. ed. at 657; emphasis supplied.) The same rule has been held to apply even where an arrest is made for a misdemeanor. See: *Garske* v. *United States,* (8th cir.) 1 F.2d 620; *Green* v. *United States,* (D.C. cir.) 259 F.2d 180.

The decisions of this court in *People* v. *Clark,* 9 Ill.2d 400, *People* v. *Edge,* 406 Ill. 490, and others now overruled by the majority opinion, which hold that a search of the person is a proper incident to a valid arrest for traffic violations, do no more than to follow the principle of the *Weeks case* as it has been interpreted and extended by subsequent Federal and State decisions.

To justify a departure from the rule adhered to in the past, the majority opinion relies on *Elliott* v. *State,* 173 Tenn. 203 (1938), 116 S.W.2d 1009. In that case, however, where a motorist was lawfully arrested for reckless driving, it was the holding of the Tennessee court only that a search of the *automobile* was unreasonable in that it bore no relation to the offense for which the arrest was made. Making it clear that it would not have considered unreasonable a search of the motorist's person, the court concluded its opinion as follows: "It will be borne in mind

that this is not a case in which evidence of the commission of another and independent offense had been described by the officer *incidental to the exercise of search within recognized authorized limits,* as for example in the Goodwin case, supra, where a concealed weapon *was found on the person* * * *. We adhere to the rule heretofore followed in this court that, when the scope of the search is within lawful limits, discoveries of independent offenses may be testified to in prosecution of such offenses." (Emphasis supplied.) *Goodwin* v. *State,* 148 Tenn. 682 (1924), 257 S.W. 79, the decision referred to, was a prosecution for a concealed weapon that had been found on defendant's person after his arrest for drunkenness. In holding that the search which produced the weapon was reasonable the court categorically states: "When the arrest is lawful the right to search the person follows."

*People* v. *Gonzales,* 356 Mich. 247 (1959), 97 N.W.2d 16, which is also relied upon by the majority opinion, goes no farther than the *Elliott case.* The Michigan court neither considered nor passed upon the question whether there must be something more than a valid arrest to render a search of the *person* reasonable, but decided only that to permit the search of an *automobile,* there must be some justification other than the issuance of a ticket for a traffic offense.

The same is true of *People* v. *Blodgett,* 46 Cal.2d 114 (1956), 293 P.2d 57. The court in that case held only that a double-parking violation would not justify a search of a *vehicle,* and did not even deal with a problem of whether a lawful arrest for such a violation would have carried with it authority to search the *person* of the one arrested.

In retrospect, it may be seen that none of the cases cited have either modified or rejected the rule that a search of the person is reasonable when one is lawfully arrested

for a criminal offense. This being so, they hardly present a persuasive or compelling basis for a retreat from our holdings in *People* v. *Clark,* 9 Ill.2d 400, and *People* v. *Edge,* 406 Ill. 490, which are recognized as representing the majority view prevailing in this country: See: 1959 Wis. L. Rev. 347, 357.

The opinion adopted by my colleagues concedes that protection of arresting officers from attack is one of the grounds that makes a search of the person a lawful incident to a valid arrest, but refuses to recognize its application here by rationalizing that we are dealing with a "minor traffic offense that ordinarily results in a 'parking ticket' hung on the handle of the car, telling the offender that it is not necessary to appear in court if he mails in the amount of his fine." This reasoning is erroneous. The mere hanging of a traffic citation on a car door is not an arrest. Moreover, we are dealing here with the situation where an officer confronts an offender face-to-face and detains him from going on his way. When experience has proved to the contrary, on occasions at the cost of the life of an arresting officer, it is illogical that we should establish by judicial fiat that all minor traffic offenders must be accepted by arresting officers as persons who pose no threat to their personal safety.

Arrests for traffic violations can have serious consequences in our society such as loss of driving privileges, substantial fines or confinement in jail, loss of employment or disqualification therefor, and we always have those cases in which an officer may unwittingly halt a stolen car for a minor violation, or confront a driver or occupant wanted for more serious violations. Human nature being what it is, we should not establish as a matter of law that none of these persons will react with violence. It is true that the great majority of arrests for traffic offenses result in no untoward incidents but, in seeking to determine what is

reasonable, it seems to me that our concern should be directed to the safety and protection of law enforcement officers, rather than to the welfare of persons who have put their rights in forfeit by violating the law. The majority says that a search of the person is reasonable if an arresting officer has basis for suspicion that something more than a routine traffic violation is involved; but this can be of little solace or help to the officer who has no suspicions until the offender suddenly produces a weapon. The only practical view, as recognized by the majority of ancient and modern courts, is that it is not unreasonable to search the person of one who has been validly arrested.

To me the opinion adopted is also subject to the vice that it fosters uncertainty and confusion in an area where none should exist, and in fact did not exist heretofore. The only result can be harassment to law enforcement and the effective prosecution of crime, with corresponding detriment to the citizens of this State. In departing from the view that a search of the person is reasonable upon lawful arrest the court says, in effect, that the search of the person here is unlawful because the offense is a minor one. The reasonableness of the search is thus made to rest on the nature of the crime, rather than the fact of arrest itself. Neither law enforcement officials nor the public can know what crimes will justify a search of the person, and with the present opinion as a guide, the validity of all searches, even after arrest for some felonies, will be in doubt until judicially tested. In my opinion the historic approach that a search of the person is reasonable upon valid arrest is the more perceptive, just and logical view and should be retained in this jurisdiction.